IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUGLAS AND SERENITY BOEDICKER,

    Plaintiffs,

v.                 Case No. 2:16-cv-02798-JTM

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

    Defendant.

**MEMORANDUM AND ORDER**

  Plaintiffs claim that their mortgage loan servicer, Rushmore Loan Management Services, LLC ("Rushmore"), violated the Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedures Act (RESPA), and the Truth in Lending Act (TILA) with respect to plaintiffs' loan, and also committed acts constituting fraudulent misrepresentation and breach of contract. The matter is now before the court on Rushmore's motion to dismiss the complaint.

  **I. Summary of the Complaint.**

  The following allegations are taken from plaintiffs' complaint (Dkt. 1). Plaintiffs were behind on their home mortgage loan and contacted Rushmore for help in getting the loan current. On January 11, 2016, Rushmore sent plaintiffs a Reinstatement Payment Plan to bring their loan current and avoid foreclosure. The Plan stated in part that "the amount required to reinstate your loan in full as of 7392.91 [sic] is $6686.55." *Id.*, ¶17. Plaintiffs were confused by the Plan and spoke to a Rushmore representative,

but the amount they were told was in arrears was not consistent with the statements that Rushmore sent. Serenity Boedicker obtained her credit report from Equifax on February 2, 2016. In it, Rushmore reported that $8,449 was past due on the account as of January 7, 2016. Plaintiffs continued to try to clarify the information from Rushmore about the amount of the debt but "could never get a consistent answer."

Prior to September 1, 2016, plaintiffs sent an application for loss mitigation ("LM #1") to Rushmore in which they listed their monthly gross income as $6,766.00. Plaintiffs received correspondence from Rushmore indicating that LM #1 was denied a review under the Home Affordable Modification Program (HAMP) because their debt-to-income ratio was outside of the acceptable (25-42%) range. Rushmore stated in the letter that plaintiffs' gross monthly income was $8,378.50, although plaintiffs' application indicated it was $6,766.00.

On September 6, 2016, plaintiffs received a letter from Rushmore offering a "Trial Modification Agreement." This letter stated that the amount in arrears through September 30, 2016, was $14,450.09. It offered a repayment proposal calling for an initial payment of $2,950.00, payments of $1,160.00 in the months of October-December 2016, and monthly payments thereafter of $1,160.00 until confirmation of a permanent modification. The proposal was silent as to the terms of a permanent modification. Plaintiffs had 14 days from the date of the letter to accept.

Plaintiffs contacted counsel, who sent a Notice of Error/Request for Information ("NOE #1") to Rushmore requesting an explanation why the loan was ineligible for

2

HAMP. Counsel requested the "waterfall analysis" used in the determination. Rushmore never provided plaintiffs with the requested waterfall analysis.

Plaintiffs' counsel sent a second Notice of Error/Request for Information dated September 14, 2016, requesting information about whether the trial loan modification agreement was a forbearance agreement or a modification agreement. Rushmore allegedly never acknowledged whether it was a forbearance agreement or a loan modification, and plaintiffs did not tender payment to Rushmore "because they did not have sufficient information to make an informed decision to determine if the trial loan modification was in their best interest." Dkt. 1, ¶40.

On October 1, 2016, plaintiffs received a letter from Rushmore indicating that their trial loan modification was denied due to a failure to return documents in a timely manner.

On November 3, 2016, plaintiffs received an acknowledgement of receipt from Rushmore of the two Notice of Error letters sent by plaintiffs, but Rushmore did not address the requested waterfall analysis or whether the trial modification was in fact a loan modification or a forbearance agreement.

On November 4, 2016, plaintiffs received a Notice of Acceleration of their mortgage from a law firm representing Rushmore.

Plaintiffs' complaint contains eight counts. The first three counts allege violations of Regulation X of RESPA (12 CFR Part 1024). Counts four and five allege, respectively, fraudulent misrepresentation and breach of contract. The last three counts allege

3

violations of the FDCPA. Rushmore moves to dismiss all of the counts for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**II. Standards Governing Motion to Dismiss – Rule 12(b)(6).**

Rule 12(b)(6) allows dismissal of a complaint where the facts alleged fail to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Complaints containing no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" may not survive a motion to dismiss. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff for purposes of determining whether the complaint states a plausible claim for relief. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). *See Cunningham v. Wichita State Univ.*, No. 6:14-CV-01050-JTM, 2014 WL 4542411, at *2 (D. Kan. Sept. 12, 2014), *aff'd*, 613 Fed.Appx. 758 (10th Cir. 2015).

**III. Discussion.**

*Count 1.* Count 1 alleges a violation of 12 CFR § 1024.41(e) in that Rushmore "wrongfully deem[ed] a borrower to have rejected a loss mitigation option." Dkt. at 8. Plaintiffs allege that Rushmore's proposed trial modification was not a loss mitigation option because it did not have any specific terms for permanent modification. They

4

allege that "Rushmore's actions in unilaterally determining this was an acceptable offer of loss mitigation pursuant to 12 C.F.R. 1024.41(e)(2) were improper…." Dkt. 1, ¶52.

Rushmore argues this fails to state a claim because § 1024.41 does not require a servicer to offer a permanent modification and does not prohibit a servicer from unilaterally determining what constitutes an acceptable offer of loss mitigation. Dkt. 11 at 3. Plaintiffs' response is confusing, but appears to be that Rushmore violated the regulation because the trial modification it offered "was not a loss mitigation option." Dkt. 12 at 6.

As Rushmore points out, the regulation does not require a servicer to offer any particular modification, so the fact that no permanent modification was offered by Rushmore was not a regulatory violation. *See* 12 CFR ¶1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option."). Plaintiffs have thus failed to allege facts in Count 1 showing a violation of a duty imposed by § 1024.41.

*Count 2*. Count 2 alleges a violation of 12 CFR § 1024.41(c) based on a "[f]ailure to properly review a completed loss mitigation application." Although the allegations are unclear, plaintiffs allude to the monthly income figure used by Rushmore in calculating plaintiffs' debt-to-income ratio, and allege that the exhibits attached to the complaint "demonstrate a clear pattern of [Rushmore's] failure to review the Plaintiffs for all loss mitigation options available by manipulating the gross income figure and provide written notice within 30 days as there is no indication of all loss mitigation options Plaintiffs were reviewed for." Dkt. 1, ¶65.

5

Section 1024.41(c) requires that, upon receipt of a complete loss mitigation application, the servicer must evaluate the borrower for all available loss mitigation options and provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer the borrower.

Plaintiffs' allegations fail to show that Rushmore violated this regulation. As Rushmore points out, there is no requirement in § 1024.41(c) that the servicer give notice of all loss mitigation options that were considered. Plaintiffs' allegations suggest that Rushmore used an erroneous income figure in determining plaintiffs' eligibility for HAMP relief. But the facts do not show a violation of the duty to evaluate the plaintiffs for loss mitigation options or to provide notice of the determination. Count 2 fails to state a claim upon which relief can be granted.

*Count 3*. Count 3 alleges a violation of 12 CFR § 1024.35 based on Rushmore's "[f]ailure to properly investigate a Notice of Error." Plaintiffs allege that in response to their Notice of Error, Rushmore failed to provide the requested waterfall analysis, failed to determine whether plaintiffs' debt-to-income ratio had been miscalculated, and failed to answer with clarity whether the trial modification agreement was a modification or repayment plan. Plaintiffs allege that Rushmore's "actions in reviewing, with [sic] any diligence, and timely corrected [sic] the errors alleged … constitute a least [sic] two separate … violations of 12 C.F.R. 1024.35(e)."

Rushmore argues that the regulations did not require it to provide a waterfall analysis. Dkt. 11 at 4-5. It further argues that plaintiffs do not specify how Rushmore failed to comply with the procedures required by § 1024.35. *Id*. at 5. Although plaintiffs'

6

complaint is not a model of clarity, it alleges a plausible claim for violation of 12 CFR § 1024.35(e), which requires a servicer to respond to a notice of error either by correcting the error or by conducting a reasonable investigation, and, in either case, by providing the borrower with a written explanation of its determination. The complaint fairly alleges that plaintiffs notified Rushmore of an error in the amount of their income with respect to the HAMP determination, but that Rushmore failed to respond with the explanation required by § 1024.35(e)(1). *See* § 1024.41(b)(7) (failure to provide accurate information to a borrower regarding loss mitigation options is an error subject to this section). The motion to dismiss count 3 is therefore denied.

*Count 4*. Count 4 alleges fraudulent misrepresentation in that Rushmore "knowingly and recklessly reviewed the application for loan modification" and offered the trial modification "knowing full well [that it] was not a modification within the scope and spirit of RESPA," Dkt. 1, ¶84, all of which allegedly damaged plaintiffs and was part of a pattern "to deceive and defraud borrowers and force them into foreclosure and/or compel bankruptcies or loss of property."

Under Kansas law, the elements of fraudulent misrepresentation are: (1) an untrue statement of past or present fact by the defendant; (2) known to be untrue by the defendant; (3) made with intent to deceive or reckless disregard for the truth of the statement; (4) on which plaintiff justifiably relies and acts to his detriment. *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191, 1195 (2004).

As an initial matter, the complaint does not make clear what false representation Rushmore made or how the representation was false. The allegation that Rushmore

7

knew that what it offered "was not a modification within the scope and spirit of RESPA," does not allege or identify a misrepresentation. Nor does it explain what constitutes a modification "within the scope and spirit of RESPA." Neither does the complaint specifically allege that Rushmore made a representation to plaintiffs with intent to deceive or with reckless disregard of its truth. Instead it alleges that Rushmore "knowingly and recklessly *reviewed the application*…." The complaint contains a general allegation of a pattern to deceive and defraud borrowers, but no factual allegations are cited in support of that conclusory allegation. Finally, no facts are alleged to show that plaintiffs justifiably relied on a specific misrepresentation to their detriment. In sum, the complaint states no claim for fraudulent misrepresentation.

*Count 5*. Count 5 alleges that the parties "have a binding contractual relationship as [Rushmore] at all relevant times has been the servicer of Plaintiffs' mortgage loan." Dkt. 1, ¶89. Rushmore allegedly "breached the Mortgage Contract" by providing information to the plaintiffs that grossly misstated their income and contained incomplete responses "as to all loss mitigation programs that the Plaintiffs' application may have been removed under." *Id.* at ¶93.

The elements of a breach of contract claim under Kansas law are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings,* 297 Kan. 2, 23, 298 P.3d 1083 (2013).

Plaintiffs allege that Rushmore was the servicer of their mortgage loan but fail to allege any facts showing the existence of a contract between them and Rushmore. Plaintiffs also fail to allege that Rushmore promised in the agreement to accurately state plaintiffs' income or to provide complete responses to all loss mitigation programs that plaintiffs applied for. For these and perhaps other reasons, Count 5 fails to allege a plausible claim for breach of contract.

*Count 6.* According to its heading, Count 6 alleges an "unconscionable means to attempt to collect a debt" in violation of 15 U.S.C. § 1692k. The body of Count 6 alleges that Rushmore "repeatedly violated 15 U.S.C. 1692(d) and (f) by failing to properly review LM #1 and offering an unconscionable payment proposal disguised as a loan modification." Dkt. 1 at ¶104.

Section 1692k makes a debt collector liable who fails to comply with any provision of Subchapter V on Debt Collection Practices. 15 U.S.C. § 1692k(a). Section 1692d prohibits acts of harassment or abuse by a debt collector. Count 6 does not state a claim under this subsection, however, because it fails to allege any acts of harassment or abuse by Rushmore. As for section 1692f, that provision states that a debt collector may not use "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiffs do not allege that Rushmore engaged in any of the acts specifically identified by § 1692f as violations of the rule. Although the list of prohibited acts in the statute is not exclusive, plaintiffs fail to allege sufficient facts to plausibly explain why Rushmore's offer of a payment plan was otherwise an unfair or unconscionable means to collect the debt. *Cf. Shroeder v. Kahrs*, 2015 WL 5837689, *3 (D. Kan. Oct. 7, 2015)

(dismissing claim where plaintiff did "not allege that defendant seeks to recover from him an amount greater than the actual debt" or committed any act specified in § 1692f.) As such, Count 6 fails to state a claim upon which relief can be granted.

*Count 7*. Count 7 alleges that Rushmore materially misrepresented the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e, when it communicated to Equifax and to plaintiffs a loan balance which it knew or should have known was false.

Section 1692e provides in part that a debt collector may not use any false representation in connection with collection of any debt, including a false representation of the amount of the debt or a communication of credit information which is known or which should be known to be false. § 1692e subs. (2)(A) and (8).

Rushmore argues that this claim fails because no facts are provided to show the materiality of any error by Rushmore respecting the amount of plaintiffs' loan balance. Dkt. 11 at 11-12 (*Citing Maynard v. Cannon*, 401 F.App'x 389, 2010 WL 4487113 (10th Cir. 2010)). Rushmore concedes that under plaintiffs' version of the facts, the amount of the balance "could be off by less than $2,000," but argues that plaintiffs fail to allege any facts showing such a discrepancy is material.

Several circuit courts have held that a misstatement must be material to sustain a claim under 15 U.S.C. § 1692e. *See e.g., Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F.App'x 377 (4th Cir. May 19, 2016); *Simon v. FIA Card Svcs. NA*, 639 F.App'x 885, 888 (3rd Cir. Feb. 17, 2016); *Walker v. Shermeta, Adams, Con Allmen, PC*, 623 F.App'x 764, 766 (6th Cir. Aug. 10, 2015). To be material, a misstatement "must have the potential to 'frustrate [the

10

least sophisticated] consumer's ability to intelligently choose his or her response,' … or must be the type of misstatement that 'would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt.'" *Conteh*, 648 F.App'x at 379 (*quoting Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119, 126-27 (4th Cir. 2014) [emphasis in *Powell*]). As plaintiffs point out, they allege that over the course of four days Rushmore reported three different account balances, with an unexplained discrepancy between them approaching $2,000. Under the circumstances, such a false statement could reasonably be viewed by an ordinary consumer as a material misstatement that could affect the consumer's weighing of options and the selection of a response. Rushmore's motion to dismiss this claim is accordingly denied.

*Count 8*. Count 8 alleges that Rushmore was a debt collector within the meaning of the FDCPA, that it attempted to collect a debt via the January Reinstatement Payment Plan, and that Rushmore violated 15 U.S.C. § 1692e(11) by failing to inform plaintiffs that the plan was a communication from a debt collector attempting to collect a debt.

Rushmore argues among other things that the Payment Plan made obvious that it was a communication from a debt collector. Dkt. 11 at 13. The court agrees. The January Payment plan was, according to the complaint, sent by Rushmore in response to a specific request from the plaintiffs, and was unmistakably from a debt collector seeking to collect a debt (e.g., "As you are aware, your loan with Rushmore … is in default. You have asked for our help in curing the default and reinstating the loan, through a payment plan that could eventually bring your payments current and help you avoid foreclosure on your property."). Plaintiffs do not allege the Payment Plan

11

was the initial communication with them, so § 1692e(11) actually only required that Rushmore disclose "that the communication is from a debt collector." Under the facts alleged, the Payment Plan effectively did so, even if it did not use those exact words. Even the least sophisticated consumer could not have been misled into thinking the communication did not come from a debt collector. *See Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2nd Cir. 1989) (there is "no requirement that the letter quote verbatim the language of the statute"). Accordingly, Count 8 will be dismissed.

**IT IS THEREFORE ORDERED** this 20th day of April, 2017, that defendant Rushmore's Motion to Dismiss (Dkt. 10) is GRANTED IN PART and DENIED IN PART. Counts 1, 2, 4, 5, 6 and 8 are dismissed for failure to state a claim upon which relief can be granted. The motion is denied with respect to Counts 3 and 7. Plaintiff's Motion for Oral Argument (Dkt. 17) is DENIED.

                                                                                                    s/ J. Thomas Marten
                                                                                                    J. THOMAS MARTEN, JUDGE