IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUGLAS AND SERENITY BOEDICKER,

        Plaintiffs,

v.                                                                      Case No. 16-2798-JTM

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiffs claim defendant Rushmore Loan Management Services, LLC ("Rushmore") violated a regulation under the Real Estate Settlement Procedures Act (RESPA) and a provision of the Fair Debt Collection Practices Act (FDCPA) in the course of servicing plaintiffs' mortgage loan. The matter is now before the court on Rushmore's motion for summary judgment. For the reasons stated herein, the court finds the motion should be granted.

**I. Facts**

Plaintiffs' response to summary judgment does not address the statement of facts in defendant's brief. Accordingly, defendant's statement is deemed admitted for the purposes of summary judgment. D. Kan. R. 56.1(a).

Plaintiff Douglas Boedicker and Plaintiff Serenity Boedicker own the property located at 721 Redbud Drive, Paola, Kansas. Defendant Rushmore is the servicer for the

mortgage on the Redbud Property that is the subject of the litigation between the parties.

Plaintiffs' loan that Defendant is servicing closed on June 29, 2005. Plaintiffs modified the loan with then-servicer National City Bank in March 2008. Plaintiffs missed payments on the loan following the March 2008 modification. Plaintiffs again modified the loan with National City in July 2009. Plaintiffs missed payments on the loan following the July 2009 modification.

Plaintiffs modified the loan with then-servicer Saxon Mortgage Services, Inc. in February 2011. Plaintiffs missed payments on the loan following the February 2011 modification. Plaintiffs modified the loan with then-servicer Specialized Loan Servicing LLC in August 2012. Plaintiffs modified the loan with then-servicer Carrington Mortgage Services, LLC in December 2013.

Plaintiff Serenity Boedicker has an employment background in finance and is familiar with the loan modification process.

Defendant became the servicer of the loan on July 1, 2014. On August 7, 2014, Defendant offered Plaintiffs a Reinstatement Payment Plan, which Plaintiffs accepted and subsequently breached. Plaintiffs' December 18, 2014 payment was returned unpaid due to insufficient funds. On February 10, 2015, Defendant offered Plaintiffs a Reinstatement Payment Plan, which Plaintiffs accepted and subsequently breached. Plaintiffs' April 1, 2015 payment was returned unpaid due to insufficient funds. On May 22, 2015, Defendant offered Plaintiffs a Reinstatement Payment Plan, which Plaintiffs accepted and subsequently breached. Plaintiffs' July 2, 2015 payment was

returned unpaid because the account was closed. Plaintiffs' August 24, 2015 payment was returned unpaid due to insufficient funds. Plaintiffs' October 13, 2015 payment was returned unpaid due to insufficient funds.

In October 2015, Plaintiffs applied for a loan modification. In November 2015, the loan modification was denied because of insufficient income. In December 2015, Plaintiffs applied for a loan modification. That same month, the loan modification was denied because of insufficient income. Plaintiffs appealed the denial of the December 2015 loan modification. The appeal was denied.

On January 6, 2016, Defendant sent Plaintiffs another Reinstatement Payment Plan, which Plaintiffs accepted. Subsequent to accepting the January 6, 2016 Reinstatement Payment Plan, Plaintiffs and Defendant agreed to revise and lower the amount of the payments. Consistent with this agreement, on January 11, 2016, Defendant sent Plaintiffs another Reinstatement Payment Plan letter. This payment plan letter included a typo. Unlike the January 6, 2016 Reinstatement Payment Plan letter, the January 11, 2016 Reinstatement Payment Plan letter inserted an amount ("7392.91") in place of a date. It stated in part: "The amount required to reinstate your loan in full as of 7392.91 is $6,686.55." Plaintiffs signed the January 11, 2016 Reinstatement Repayment Plan letter and returned it to Rushmore on January 13, 2016. When returning the January 11, 2016 Reinstatement Repayment Plan letter, Plaintiffs did not have any questions or express any concerns about the typo in the letter.

The only issue Plaintiffs had with the January 11, 2016 Reinstatement Repayment Plan was its "discrepancy" with other reinstatement plans in regards to the payment

3

amounts. The payment amounts in the January 11, 2016 Reinstatement Repayment Plan were lower. Plaintiffs did not mention the typo when discussing issues with the January 11, 2016 Reinstatement Repayment Plan. Plaintiffs failed to make any of the payments under the January 11, 2016 Reinstatement Repayment Plan. Plaintiffs' February 26, 2016 payment was returned unpaid due to insufficient funds.

In April, 2016 Plaintiffs were offered two Reinstatement Payment Plans. They accepted one and later breached it. In June, 2016 Plaintiffs were offered a Reinstatement Payment Plan, which they accepted and later breached. Plaintiffs' June 22, 2016 payment was returned unpaid due to insufficient funds. In July 2016, Plaintiffs were offered a Reinstatement Payment Plan, which they accepted and breached.

In August 2016, Plaintiffs applied for another loan modification. In September 2016, the loan modification was denied because of insufficient income.

Plaintiffs mailed Defendant a "Notice of Error" (NOE 1) on September 14, 2016 asking for additional information concerning a letter dated September 1, 2016. The only "errors" Plaintiffs asserted in NOE 1 were not being provided with an appraisal and a waterfall analysis.

Plaintiffs mailed Defendant a second "Notice of Error" (NOE 2) on September 14, 2016 asking questions concerning a letter dated September 1, 2016. The only "errors" Plaintiffs asserted in NOE 2 concerned whether the "trial loan modification" was a forbearance agreement or modification and what would happen to the $2,950.00 payment.

On November 1, 2016, Defendant timely responded to Plaintiffs' NOE 1 and NOE 2 via FedEx Shipping. Plaintiffs admit that Defendant's Response to NOE 1 includes a waterfall analysis, as Plaintiffs understand the term. Plaintiffs do not think the analysis is adequate. Plaintiffs further agree that the monthly income Defendant used in assessing Plaintiffs' debt-to-income ratio was accurate.

Defendant's response to NOE 1 and NOE 2 answered Plaintiffs' question of whether the "trial loan modification" is a forbearance agreement or modification by stating that "on September 1, 2016, Rushmore sent your clients a Trial Modification Agreement for their review, signature and return." Defendant's response to NOE 1 and NOE 2 answered Plaintiffs' question of how the $2,950.00 payment would be applied by stating: "The initial payment of $2,950.00, which was due within 14 days of the delivery date of the Agreement, would be placed in your client's suspense account pending completion of the trial plan."

Plaintiffs have no memory of Defendant ever representing to them that the amount reported to Equifax as "Past Due" was a reinstatement amount.

The "past due" amount reported to Equifax is different from a reinstatement figure. The past due amount reported to Equifax was accurate.

Plaintiffs obtained what is purported to be an Equifax report on their own.

**II. Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim,

5

and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol– Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Discussion

<u>RESPA Claim</u>. As the court noted in denying a motion to dismiss plaintiffs' RESPA claim (Count Three of the complaint), the claim is not a model of clarity. (Dkt. 22 at 7). The complaint alleged that plaintiffs notified defendant of an error in the amount of their income with respect to the HAMP denial, and that defendant failed to respond to that error with the explanation required by 12 CFR § 1024.35(e)(1). But an examination of the underlying documents shows that plaintiffs did not provide notice of such an error. NOE 1 did not assert any error in plaintiffs' income or challenge the HAMP denial; it merely asserted that defendant failed to provide plaintiffs with the appraisal and waterfall analysis used in making the HAMP determination. Defendant timely responded with an explanation of the denial and the valuation and analysis used in making the determination. (Dkt. 39-8). Similarly, in NOE 2, plaintiffs asked whether defendant's September 1, 2016 letter was a forbearance agreement or modification, and

how the $2,950 payment called for by the proposal would be applied. (Dkt. 39-7). Defendant's response called the September 1, 2016 letter a "Trial Modification Agreement," and said the $2,950 initial payment "would be placed in your client's suspect account pending completion of the trial plan." (Dkt. 39-8 at 2). It said the terms of a final modification would be provided only after the trial modification was completed. (*Id.*).

12 CFR § 1024.35(b) defines the types of errors that are subject to RESPA resolution procedures. The NOEs cited by plaintiff failed to describe any error within any of these categories. Plaintiffs attempt to get around this fact by characterizing their notices as broadly challenging defendant's eligibility determination. *See* Dkt. 40 at 11 ("Plaintiffs allege that had Rushmore properly reviewed the loss mitigation application or had revisited is [sic] loan mod review as requested in NOE #1 and NOE #2, that Rushmore would have discovered its errors and offered an affordable loan modification to the Boedickers."). The notices did not assert errors in the eligibility determination; they requested documents and asked for clarification on two specific points. Those requests did not assert errors within the meaning of § 1024.35. But even if the notices could be construed as asserting such errors, the uncontroverted facts show defendant complied with the regulation by timely responding to plaintiffs' questions and providing the explanation and documentation requested. Accordingly, defendant is entitled to summary judgment on plaintiffs' RESPA claim.

<u>FDCPA Claim</u>. In Count Seven of the complaint, plaintiffs allege defendant materially misrepresented the amount of the alleged debt when it communicated a

7

balance to Equifax which it knew or should have known was false. (Dkt. 1 at 17). *See* 15 U.S.C. § 1692e (a debt collector may not use any false or misleading representation in connection with the collection of any debt). Specifically, plaintiffs allege that defendant reported to Equifax in January 2016 that "the amount of arrears was $8,449." (Dkt. 1 at 17). Alternatively, plaintiffs allege defendants misrepresented in the January 11, 2016 Reinstatement Plan that the amount of arrears was $6,686.55. (*Id*.). In the Pretrial Order, plaintiffs have added another theory, namely that the January 11, 2016 Reinstatement Plan "contained an incorrect … date to reinstate the loan." (Dkt. 37 at 11).

Plaintiffs cite no evidence that the stated amount of arrears in the January 11, 2016 Reinstatement Plan—$6,686.55—was a false or misleading representation. They offer no accounting of the loan balance, or of payments or fees. Instead, they argue circumstantially that either this figure or an amount ($8,449) appearing in an Equifax credit report at about the same time must be false. But plaintiffs do not attach the credit report as a summary judgment exhibit, nor do they authenticate it or provide a foundation for its admission.[1] Moreover, as defendant points out, plaintiffs cite no evidence that the "amount past due" in the Equifax report is referring to the same thing as the "reinstatement amount" in the January 11, 2016 Reinstatement Plan. Plaintiffs merely cite the deposition testimony of Rushmore representative Anthony Younger, but Younger testified that defendant accurately reported plaintiffs' loan information to Equifax and that the amount in the Equifax report, unlike the January 11, 2016

---

[1] The complaint has an attachment that purports to be part of an Equifax Credit Report for Serenity Boedicker. Dkt. 1-2. Among other things, it represents that the loan had a balance of $138,152 and an "amount past due" of $8,449. The loan entry shows Rushmore as the loan servicer and a "Date Reported" of January 7, 2016.

8

Reinstatement Plan, set forth everything that was due on the account including a payment due as of January 1. (Dkt. 40-4 at 20-21). He said the Reinstatement Plan amount was the amount needed to reinstate the loan up to the January payment. (*Id.* at 20). Plaintiffs cite no evidence from which a jury could reasonably conclude that one or other of the two figures ($6,686.55 or $8,449) must have been false. The evidence is that the two figures represented two different things. *Cf. Johnson v. Ocwen Loan Servicing LLC*, No. 3:16-CV-2213-M, 2017 WL 6806688, at *16 (N.D. Tex. Nov. 16, 2017), *report and recommendation adopted in part, rejected in part,* No. 3:16-CV-2213-M, 2018 WL 295792 (N.D. Tex. Jan. 4, 2018) (differences between the reinstatement amount and the accelerated amount, and increases in those amounts reflecting newly accrued charges and fees, do not constitute misrepresentations).

Insofar as plaintiffs' claim is premised on the typographical error in the January 11, 2016 letter —which stated that the reinstatement amount "as of 7392.91 is $6,686.55" —the court rejects the argument that this constituted a false or misleading representation of the reinstatement amount. The insertion of the first number into what was clearly supposed to be a date would have been understood by any reasonable person to be a typographical error, and not a representation of the amount of the debt. (Plaintiff had in fact received a similar Reinstatement Plan only five days earlier that stated: "The amount required to reinstate your loan in full as of 01/25/2016 is $6686.55." (Dkt. 40-5 at 1)). The uncontroverted evidence further shows this was in fact plaintiffs' understanding of the document, which they accepted. In sum, plaintiffs have failed to show a genuine issue of fact for trial on the FDCPA claim.

**IT IS THEREFORE ORDERED** this 12th day of February, 2018, that defendant Rushmore's Motion for Summary Judgment (Dkt. 38) is hereby GRANTED.

      ___s/ J. Thomas Marten_____
      J. THOMAS MARTEN, JUDGE